IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID R.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-1509-RJD[2] |
| | ) | |
| COMMISSIONER of SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423.

**Procedural History**

In March 2022, Plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of October 5, 2019. Tr. 22. After holding an evidentiary telephone hearing on May 29, 2024, ALJ Matthias Onderak denied the application on June 12, 2024. Tr. 22, 33. On June 9, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 6. Plaintiff appealed to this Court.

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 11.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. A person is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 404.1520(a)(4). An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability. *Id.*

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted). However, the undersigned does not act as

a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

**The Decision of the ALJ**

The ALJ followed the required five-step analytical framework. Tr. 24-33. He determined that Plaintiff had not engaged in substantial gainful activity from October 5, 2019 (the alleged onset date) through March 31, 2022 (Plaintiff's date last insured). Tr. 24. The ALJ determined that Plaintiff had the following severe impairments: bilateral knee arthritis, cervical degenerative disc disease, diabetes mellitus, hypertension, and obesity. Tr. 24. However, he found that through the date last insured, Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the applicable regulations. Tr. 25.

The ALJ determined that Plaintiff had the following RFC:

> [He can] perform light work as defined in 20 CFR 404. 1567(b) except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He should avoid exposure to work hazards such as exposure to unprotected elevations.

Tr. 27. Through March 31, 2022, Plaintiff could perform past relevant work as an auto parts inspector and delivery driver. Tr. 31. These jobs, as actually performed by Plaintiff, did not require activities that exceeded Plaintiff's RFC. Tr. 31. The ALJ concluded that considering Plaintiff's "age, education, work experience, and residual functional capacity", Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. Tr. 33.

**The Evidentiary Record**

The following summary of the record is tailored to Plaintiff's arguments.

**1. Medical records**

Plaintiff underwent x-ray imaging of his cervical spine in May 2019. Tr. 482. The radiologist's impression was "mild degenerative disease." Tr. 482.

Plaintiff presented to his primary care practitioner, Physician Assistant Rachel L. Terrill, on June 28, 2019 "to discuss paperwork for disability." Tr. 422. PA Terrill noted that Plaintiff had "arthralgias, back pain, gait problem, and joint swelling", as well as knee pain and left shoulder pain. Tr. 422. His blood pressure was 154/88. Tr. 422. He had decreased range of motion in his left shoulder, right knee, and left knee. Tr. 423. He also had swelling in both knees and decreased strength in his left shoulder. Tr. 423. Plaintiff had the following diagnoses: primary osteoarthritis of left knee, type 2 diabetes mellitus without complication, and mixed hyperlipidemia.

Plaintiff returned to PA Terrill on July 30, 2019 for chronic uncontrolled high blood pressure. Tr. 425. The PA noted that Plaintiff had chronic neck pain and radicular symptoms. He also presented for a follow-up visit for his diabetes, which was improving. Tr. 425. He was showing no signs of hypoglycemia. Tr. 425. His blood pressure was 179/96. Tr. 426. He was to take an increased dose of blood pressure medication, otherwise continue his current medications, and monitor his high blood pressure closely. Tr. 427.

Plaintiff returned to PA Terrill on November 1, 2019 for a follow-up visit for his high blood pressure and diabetes. Tr. 428. His blood pressure was 156/90. Tr. 428. PA Terrill ordered an additional blood pressure medication. Tr. 430. PA Terrill noted that Plaintiff's diabetes

symptoms were improving. Tr. 428.

On September 3, 2020, Plaintiff presented to PA Terrill for his annual exam. Tr. 433. He also reported that "about 4 weeks ago, he felt a pop in the front part of his head and then had sudden double vision that lasted for 4-5 hours, was associated with nausea and vomiting, dizziness, and generalized weakness." Tr. 431. Plaintiff's blood pressure was 150/96. Tr. 432. PA Terrill ordered labs and increased Plaintiff's blood pressure medication. Tr. 434. She also recommended magnetic resonance imaging for further evaluation of his symptoms. Tr. 434. She noted that Plaintiff had normal range of motion and no edema in either leg. Tr. 43. Plaintiff was "positive for arthralgias" but also noted that he had normal range of motion and no edema in either lower leg." Tr. 433. His cervical spine also had normal range of motion. Tr. 432. Magnetic resonance imaging of Plaintiff's brain in December 2020 revealed no acute intracranial abnormality but "periventricular and subcortical white matter T2 hyperintensities that are nonspecific and can be seen with migraine headaches and/or small vessel disease." Tr. 487.

Plaintiff saw a nurse practitioner on June 22, 2021 for routine follow-up and "reporting neck pain [which] seems to be getting worse, with worsening of the numbness in the arms at times." Tr. 437. The nurse practitioner noted "decreased movement" related to pain in the cervical spine. Tr. 439. Plaintiff had no edema in his right or left lower legs. Tr. 439. Plaintiff further reported that he was "still having dizzy spells with movements or standing" and "intermittent chest pain." Tr. 437. Plaintiff's blood pressure was 160/100. Tr. 438. The nurse practitioner increased Plaintiff's blood pressure medication and noted that "if we are unable to get the dizziness with movements under control with controlling the glucose and BPs we will refer for further eval." Tr. 440.

X-rays of Plaintiff's cervical spine showed "chronic discogenic degenerative disease and facet arthrosis, greatest at C5-C6." Tr. 488. The disc space narrowing at C5-C6 was mild to moderate. Tr. 488.

Plaintiff saw the nurse practitioner again on February 23, 2022. Tr. 445. Plaintiff reported that his left knee was "popping and crunching." Tr. 443. His left knee was replaced in 2018. Tr. 443. His right knee was also painful; he had recently "twisted the knee" following an ice storm. Tr. 443. The nurse practitioner ordered x-rays that revealed "mild tricompartmental osteoarthritis" in Plaintiff's right knee and post left knee arthroplasty. Tr. 489.

Also at the February 23, 2022 visit, Plaintiff reported that he was still having dizzy spells and the nurse practitioner reviewed the 2020 MRI report which noted findings that were consistent with "migraine headaches and/or small vessel disease." Tr. 443. Plaintiff reported that he did not feel migraine headaches and had not been seen by a neurologist. Tr. 443. The nurse practitioner noted that "we discussed the possibility that the dizziness was what his migraines were manifesting as, since the MRI showed he had migraines on the scan." Tr. 445. Plaintiff agreed to start medication for migraine prevention to see if his dizziness improved. Tr. 445. The nurse practitioner prescribed Qulipta for migraine headaches and Mobic for Plaintiff's arthritis pain. Tr. 446.

**2. Medical Opinions**

Dr. John Peterson (state agency physician) reviewed Plaintiff's records and opined that Plaintiff could frequently balance and climb ramps and stairs but only occasionally climb ladders/ropes/scaffolds. Tr. 134. He further opined that Plaintiff could only occasionally stoop, kneel, crouch, and crawl and should avoid concentrated exposure to hazards. Tr. 134, 135. Dr.

Calixto Aquino (another state agency physician) agreed with Dr. Peterson's findings except he found that Plaintiff could only occasionally reach overhead and frequently reach forward with the left extremity. Tr. 154. The ALJ found these opinions "persuasive to the extent they support limiting [Plaintiff] to the light exertional level" but found that Plaintiff's treatment notes during the relevant period "better supported" limiting Plaintiff to occasionally climbing ramps and stairs and never climbing ladders, ropes, or scaffold. Tr. 31.

**3. Evidentiary Hearing**

Plaintiff last worked in May 2017 as a pest exterminator for Orkin, which involved frequent standing or crawling. Tr. 44. The pain became unbearable related to crawling underneath houses. Tr. 46. Prior to working for Orkin, Plaintiff worked at Aisin Manufacturing building car parts for Toyota. Tr. 45. He would build plastic pieces, inspect them, and fix them (if necessary). Tr. 45. Plaintiff also worked at Continental Tire as a tugger operator, supplying machines with various parts of rubber to make a tire. Tr. 46. This job involved "a lot of pushing and pulling extremely heavy parts just going in and out of the thing." Tr. 46. He stood while operating the tugger. Tr. 46. From 2009-2011, he worked as a delivery driver for Speedy Delivery. Tr. 44. This job involved "lifting, a lot of walking, a lot of driving, carrying….from 5 pounds….up to 30 pounds. Tr. 46.

Plaintiff's degenerative disc disease caused numbness and pain in his legs. Tr. 53-54. He could not reach down and pick anything up off the floor when he had pain in his legs. Tr. 59. If he went grocery shopping, he would have to stop and sit down at times. Tr. 58. He could sit for approximately two hours before he had to move or change positions. Tr. 54. He could walk approximately one block. Tr. 54. He could stand 60-90 minutes in one place, but then the pain

would become "unbearable." Tr. 54-55. At night, he could only sleep three to four hours and then woke from the pain. Tr. 56. In 2022, Plaintiff hurt his left arm when he reached down to pick up a piece of wood at a friend's house. Tr. 48.

Plaintiff felt that he could not work because of his diabetes, high blood pressure, and migraines. Tr. 48, 49. He has never been able to control his diabetes, even after losing forty pounds. Tr. 49. He becomes dizzy because of his high blood pressure and has "massive migraines that [he does not] feel." Tr. 52. Approximately once a week, he has double vision related to his high blood pressure. Tr. 52. The dizziness episodes occurred every day; approximately twice a month, he would become so dizzy that he would fall. Tr. 53.

The ALJ asked the vocational expert to assume a person with Plaintiff's work history and of the same age, who could "perform a range of light work, occasionally climbing ramps and stairs, never ladders, ropes, and scaffolds….[and who] should avoid exposure to work hazards such as exposure to unprotected elevations." Tr. 62. The vocational expert testified that the hypothetical person could work as a tugger operator, a car parts inspector (i.e., Plaintiff's job at Aisin), and delivery driver (as Plaintiff performed the job). Tr. 62. The vocational expert further testified that the hypothetical person could work as an electronics worker, garment folder, and mail clerk. Tr. 63. The vocational expert thought Plaintiff described the tugger operator position as light work. Tr. 62. Plaintiff could remain off task between eight and ten percent during the day.

## Analysis

Plaintiff's first argument is that the ALJ failed to consider the effect Plaintiff's "chronic pain" would have on his concentration, persistence, and pace. The Court notes that Plaintiff did not testify to any issues with his ability to concentrate, nor do his records reflect any type of

treatment for (or diagnosis of) mental impairments. Tr. 414-447. When Plaintiff completed the function report, he did not indicate that his conditions had any effect on concentration or ability to follow instructions or complete tasks. Tr. 48-60, 332. Nonetheless, to advance his argument, Plaintiff cites case law discussing the effect pain has on one's mental impairments. In every case cited, the claimant reported mental impairments like poor focus and sought treatment for those impairments, and/or was diagnosed with mental impairments: *Karen C. v. Kilajazi*, 2022 WL 1448598, Case No. 21-cv-410, *4 (N.D. Ind. May 9, 2022); *Lester v. Chater*, 81 F.3d 821, 826 (9th Cir. 1995); *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). None of the cases cited find that the ALJ must assess a claimant's mental impairments simply because the ALJ has found that Plaintiff has a severe impairment involving pain.

Plaintiff then argues that the ALJ substituted his lay opinion for that of the medical experts, claiming that the ALJ improperly rejected Dr. Aquinas' opinion that Plaintiff could only occasionally reach overhead and frequently reach forward with his left arm. Tr. 30. The ALJ was limited to a specific time frame-October 2019 through March 2022-and none of the records indicated that Plaintiff had any issues reaching with his left arm during that time period. Dr. Aquinas reviewed a consultative exam that occurred after the relevant time period. Plaintiff's brief refers to treatment for his left arm in August/September 2022 and Plaintiff claims that the "evidence suggests that [the injury] was present prior to the date last insured." This argument has no basis in the record.

Plaintiff also claims that the ALJ "entirely failed to evaluate Plaintiff's difficulty walking and lumbar spine condition." To the contrary, the ALJ clearly considered Plaintiff's testimony regarding back pain and difficulty walking. Tr. 28-30. The ALJ then weighed Plaintiff's

testimony against the medical records and Plaintiff's reported activities of daily living, and found that Plaintiff could occasionally climb ramps and stairs, and otherwise perform light work. Tr. 31.

As for Plaintiff's contention that the ALJ failed to consider Plaintiff's lumbar spine condition, none of the relevant records reflect complaints of lumbar spine pain and/or treatment. Plaintiff carried the burden of producing medical records for the ALJ to review that supported his claim of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). In his brief, Plaintiff refers to consultative examinations (and a review of one of the examinations by a state agency physician) that occurred after the date last insured. Doc. 15, p. 16; Tr. 633-35, 683-90. To the examiners, Plaintiff reported that he had a history of lumbar spine disease, including surgery in 1998. Tr. 633-35, 683-90. Regardless, Plaintiff did not seek treatment for his lumbar spine pain during the relevant time period in this case, nor is there any indication in the medical record that he complained of lumbar spine pain during that time.

Overall, the ALJ's decision reflects that he considered Plaintiff's subjective complaints in comparison to medical evidence and Plaintiff's reports of his activities of daily living during the relevant time period. There is a logical bridge between the evidence and the ALJ's findings. None of Plaintiff's arguments to the contrary have any support in the record.

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for disability insurance benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: September 28, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**